**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION**

| | | |
|---|---|---|
| Milliken & Company, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 7:12-cv-02301-JMC |
| | ) | |
| v. | ) | |
| | ) | **OPINION AND ORDER** |
| Linda D. Reynolds, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the court on Plaintiff Milliken & Company, Inc.'s ("Milliken") Motion for a Temporary Restraining Order and Preliminary Injunction [Dkt. No. 7] and Defendant Linda D. Reynolds's ("Reynolds") Motion to Dismiss and/or to Transfer the Case and For a More Definite Statement [Dkt. No. 10].

**FACTUAL AND PROCEDURAL BACKGROUND**

Milliken is a Delaware corporation, duly authorized and registered to do business in South Carolina, with its corporate headquarters for all of its worldwide operations located in Spartanburg, South Carolina. As part of its business operations, Milliken designs, manufactures, markets, and sells commercial carpet products for customers, including a wide range of high performance modular and broadloom floor coverings for customers in the commercial retail industry, both inside and outside of the United States. Milliken refers to this part of its business as the Floor Covering Division.

1

Milliken hired Reynolds to work in a sales position within the Floor Covering Division on or about March 26, 1996, and she worked in that same capacity throughout her career.[1]  Her assigned territory included northern California, where Reynolds has lived and worked during all times relevant to this matter.  Reynolds signed an Associate Agreement containing a non-competition clause and forum selection clause.  However, the parties disagree as to the timing of Reynolds's execution of the Associate Agreement and whether Reynolds was already a Milliken employee when she signed the Associate Agreement.

The Associate Agreement between Milliken and Reynolds provides, in relevant part:

For a period of two (2) years after termination of my employment with Milliken:

b. If I have been employed by Milliken in a sales capacity at any time during the last two years of my employment by Milliken, I will not render the same or similar services in the United States, Canada or any other country where Milliken markets products directly or indirectly, to any Conflicting Organization in connection with the promotion of any Conflicting Product to any person or organization upon whom I called, or whose account I supervised on behalf of Milliken, at any time during the last two years of my employment by Milliken.

c. If I have been or am employed by Milliken in a nonsales capacity at any time during the last two years of my employment by Milliken, I will not render, to any Conflicting Organization, services in connection with any Conflicting Product in the same or a similar capacity in which I served with Milliken, directly or indirectly, in the United States, Canada or in any country in which Milliken has a plant for manufacturing a product upon which I work during my employment by Milliken or in which Milliken provides a service in which I participate during my employment with Milliken, except that I may accept employment with a large Conflicting Organization whose business is diversified (and which has separate and distinct divisions), and which as to part of its business is not a Conflicting Organization, provided Milliken, prior to my accepting such employment, shall receive separate written assurances satisfactory to Milliken from such Conflicting Organization and

---

[1]The parties describe Reynolds's job title in different ways.  Reynolds indicates that she was hired as a sales associate, while Milliken describes her as a Senior Territory Manager.  For purposes of this order, it is a distinction without a difference.

2

>from me, that I will not render services directly or indirectly in connection with any Conflicting Product.

Associate Agreement ¶ F(b) & (c) [Dkt. No. 1-1].

The Associate Agreement defines "Conflicting Product" as:

> . . . any product, process, system or service of any person or organization other than Milliken, in existence or under development, which is the same as or similar to or competes with, or has a usage allied to, a product, process, system or service upon which I work (in either a sales or non-sales capacity) during the last two (2) years of my employment by Milliken, or about which I acquire Trade Secrets or Confidential Information.

Associate Agreement ¶ 5. The Associate Agreement defines "Conflicting Organization" as "any person or organization which is engaged in or about to become engaged in research on or development, production, marketing, leasing, selling or servicing of a Conflicting Product." Associate Agreement ¶ 6. The Associate Agreement further restricts Reynolds from disclosing trade secrets or confidential information for a period of three (3) years after termination of employment with Milliken. *See* Associate Agreement ¶ B.

Additionally, the Associate Agreement contains a forum selection clause designating South Carolina as the exclusive jurisdiction in which any dispute arising out of the agreement should be litigated. *See* Associate Agreement ¶ H. The parties also agreed to submit to the exclusive personal jurisdiction of the courts located in South Carolina. *Id.*

While employed with Milliken, Reynolds was responsible for working with existing and prospective Milliken customers, including AT&T, to solicit sales of Milliken's commercial carpet and floor covering products and assist with the design, implementation, installation, and maintenance of these products. Reynolds resigned her position with Milliken on or about October

29, 2010, and accepted an offer with Shaw Industries Group, Incorporated ("Shaw"), a direct competitor of Milliken, as Shaw's Vice-President of Strategic Accounts.

Milliken contends that, during Reynolds's employment, it provided her with confidential, proprietary, and trade secret information about the company's carpet and flooring products, including Milliken's current and future marketing and sales strategies for these products, customer prospects, pricing and design issues, and delivery and quality issues. Milliken further asserts that it has provided Reynolds with strategic business information regarding Milliken's solicitation of and relationship with AT&T, as well as significant training and education in various sales techniques and personal development. Milliken alleges that, despite having given Milliken assurances that she would not solicit or service any of her former clients, Reynolds is actively marketing and selling Shaw's products to her former customers. Milliken further alleges that Reynolds has assisted Shaw in securing the second phase of a significant contract with AT&T using Milliken's pricing information which Reynolds acquired while directly negotiating the initial phase of the contract in 2009 with AT&T on behalf of Milliken.

Milliken brought this action against Reynolds alleging breach of contract, misappropriation of trade secrets, tortious interference with contractual relationships, and unjust enrichment. Shortly after filing the complaint, Milliken filed a Motion for Temporary Restraining Order and Preliminary Injunction [Dkt. No. 7] under Rule 65 of the Federal Rules of Civil Procedure seeking to restrain Reynolds from engaging in activities that violate her Associate Agreement with Milliken. In response to Milliken's Complaint and motion, Reynolds filed a Motion to Dismiss and/or to Transfer the Case and For a More Definite Statement [Dkt. No. 10] pursuant to Rules 12(b)(1), (b)(2), (b)(3) and (b)(6) of the Federal Rules of Civil Procedure, seeking dismissal of the matter on the bases of

lack of subject-matter jurisdiction, lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief can be granted. Alternatively, Reynolds requests the court to transfer venue of the case to the United States District Court for the Northern District of California.

The court held a hearing on these matters on September 19, 2012, and thereafter allowed the parties additional time to make additional written arguments on the pending motions. Upon review of the written submissions of the parties, witness testimony, and arguments of counsel, the court grants Reynolds's request for a transfer of venue to the United States District Court for the District of Northern California on the basis that it is a more convenient forum in which to litigate this matter and declines to address the remaining motions.

## DISCUSSION[2]

Title 28 of the United States Code governs the selection of the proper venue of a case filed in district court. Section 1404(a) allows the district court to transfer cases that are originally filed in a proper venue, but which have an alternative appropriate venue that would better serve "the

---

[2]Reynolds requests that the court transfer this case to the United States District Court for the District of Northern California, where Reynolds resides. While Reynolds cites Section 1406(a) of Title 28 of the United States Code as the basis of her motion, the text cited in her written submissions and at oral argument during the hearing on the pending motions actually relates to Section 1404(a). *See* Defendant's Memorandum in Support of Her Motions to Dismiss and/or to Transfer the Case and For a More Definite Statement, at 13 [Dkt. No. 10-1] (misquoting *Hernandez v. Graebel Van Lines*, 761 F. Supp. 983, 986 (E.D.N.Y. 1991) by stating that "Section 1406(a), of Title 28 of the United States Code, provides that, 'For the convenience of parties and witnesses, and the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.'"). Presumably, Reynolds relies on § 1406(a) because she argues that venue is improper in the District of South Carolina due to the dispute over the enforceability of the forum selection clause in the Associate Agreement. However, it is unnecessary for the court to resolve this dispute at this juncture of the litigation because the analysis of the propriety of a transfer under Section 1404(a) or 1406(a) is fundamentally the same. Accordingly, while it is not completely clear under which statute Reynolds intended to seek the transfer, the court finds that its analysis would be the same under either.

convenience of parties and witnesses, and the interest of justice." When a case is filed in an improper venue, 28 U.S.C. § 1406(a) allows the district court to dismiss or, where appropriate, transfer the matter to the proper venue so as to better serve the "interest of justice." Both sections allow transfers to "any district or division in which [the action] could have been brought." 28 U.S.C. §§ 1404(a) and 1406(a), while section 1404(a) also allows transfers to a district or division upon the consent of the parties. Transfers "in the interest of justice" under § 1404(a) follow identical standards as transfers under § 1406(a). *See Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1201 n.5 (4th Cir. 1993).

Although the district court has broad discretion in determining whether to transfer a case, the court's decision must be "an individualized case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *see also Avant v. Travelers Ins. Co.*, 668 F. Supp. 509, 510 (D.S.C. 1987) ("Generally, the test of whether an action should be transferred to another jurisdiction is one of balancing convenience"). In "[d]eciding whether an action should be transferred," the court is required "to balance the relative convenience of the district in which the action was filed with the convenience of the proposed transferee district." *Figgie Int'l, Inc. v. Destileria Serralles, Inc*., 925 F. Supp. 411, 413 (D.S.C. 1996). The movant has the burden to demonstrate "by a preponderance of the evidence that the proposed transfer will better and more conveniently serve the interests of the parties and witnesses and better promote the interests of justice." *Id.*(quoting *Gerber v. Canfield*, 315 F. Supp. 1175, 1177 (D.S.C. 1970)).

The determination of whether a transfer of venue is appropriate requires the court to first consider whether the action is one that could have been brought in the transferee court. *See JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 735 (E.D. Va. 2007); *see also United States v. $78,850.00 in*

6

*U.S. Currency*, C.A. No. 2:05-1752-PMD, 2006 WL 2384709, at *3 (D.S.C. Mar. 9, 2006) (citation omitted). In this diversity action, venue may be properly found in

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Here, Reynolds requests that the court transfer venue of this action to the United States District Court for the District of Northern California. It is undisputed that Reynolds currently resides in Contra Costa County in the State of California, which is within the jurisdiction of the United States District Court for the District of Northern California. Additionally, a substantial part of the events giving rise to the claims in this case occurred in Northern California. Therefore, this action could have been brought in that court.

Upon determining that the action could have been brought in the transferee court, the court must also consider various case-specific factors, including the plaintiff's choice of venue; the convenience of the parties and witnesses; the cost of obtaining the attendance of the witnesses; the availability of compulsory process; the ease of access to the sources of proof; the possibility of a view by the jury; the interest in having local controversies decided at home; and the interests of justice. *Landers v. Dawson Constr. Plant, Ltd.*, Nos. 98–2709, 98–2763, 201 F.3d 436 (Table), 1999 WL 991419, at *2 (4th Cir. Nov.2, 1999) (unpublished table opinion).

**Plaintiff's Choice of Venue**

Milliken contends that its choice to file this litigation in this District in accordance with the forum selection clause in the Associate Agreement should be dispositive, and the court should deny Reynolds's request for transfer of venue on this ground.

"Generally, a plaintiff's choice of forum will not be disturbed lightly, [and] a defendant has a heavy burden when it moves to transfer a venue properly selected by the plaintiff." *Sw. Equip., Inc. v. Stoner & Co., Inc.*, C.A. No. 6:10-1765-HMH, 2010 WL 4484012, at *2 (D.S.C. Nov. 1, 2010). Additionally, "[t]he presence of a forum-selection clause . . . will be a significant factor that figures centrally in the district court's calculus." However, the court should consider "the fairness of transfer in light of the forum-selection clause and the parties' relative bargaining power." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

Discussing the effect of forum selection clauses on motions to transfer venue, the United States Supreme Court directs the district court

> to take account of factors other than those that bear solely on the parties' private ordering of their affairs. The district court also must weigh in the balance the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of "the interest of justice." It is conceivable in a particular case, for example, that because of these factors a district court acting under § 1404(a) would refuse to transfer a case notwithstanding the counterweight of a forum-selection clause. . . . Congress has directed that multiple considerations govern transfer within the federal court system . . .

*Id.* at 30-31. "The forum-selection clause, which represents the parties' agreement as to the most proper forum, should receive neither dispositive consideration . . . nor no consideration . . . but rather the consideration for which Congress provided in § 1404(a)." *Id.*

Milliken selected the District of South Carolina, Spartanburg Division in which to file suit against Reynolds as provided in the forum selection clause of the Associate Agreement. Additionally, Plaintiff's principal place of business is located in Spartanburg, South Carolina, and, because Milliken claims primarily economic injuries, there is a discernible connection between the controversy and Milliken's chosen forum. Assuming the validity of the forum selection clause, which the court well-understands is vehemently disputed by Reynolds, this factor weighs in favor of retention of the case in this district.

**Convenience of the Parties and Witnesses**

The convenience of witnesses is an important consideration in determining whether to grant or deny a motion to transfer venue. *Sw. Equip., Inc.*, 2010 WL 4484012, at *3 (citing *Roby v. Gen. Tire & Rubber Co.*, 500 F. Supp. 480, 486 (D. Md. 1980) for the proposition that it is the "most important" factor to consider).

> When analyzing convenience of witnesses, courts frequently distinguish party witnesses from non-party witnesses. Party witnesses are parties themselves and those closely aligned with a party, and they are presumed to be more willing to testify in a different forum, while there is no such presumption as to non-party witnesses. Therefore, courts typically afford greater weight to convenience of non-party witnesses than party witnesses.

*Id*. (citing *Finkel v. Suburu of. Am., Inc*., No. 3:06-cv-292, 2006 WL 2786811, at *4 (E.D. Va. Sept. 26, 2006)(internal quotation marks omitted).

Reynolds argues that this factor strongly weighs in favor of transferring venue to the District for Northern California because she resides and works in that district and many of the material witnesses also reside in that district. Reynolds contends that retaining the litigation in the District of South Carolina would impose a significant economic, physical, and mental burden on her and her family and that this burden is sufficient to warrant the transfer of venue. However, Reynolds has

only provided the court with an affidavit attesting to the burden that litigating in the District of South Carolina would pose on her and her family, but has not submitted any affidavits from potential witnesses concerning their proposed testimony or circumstances.

Milliken objects to Reynolds's request primarily on the ground that Reynolds has failed to offer sufficient proof that litigation in the District of South Carolina would pose any inconvenience to any witness in this case other than Reynolds herself.  Milliken specifically notes that Reynolds has not provided the court with any information from which the court could determine the relative inconvenience of the forums such as the names of potential material witnesses, where they reside, and the information they may provide at trial.  Milliken has identified several of its employees or affiliates as potential witnesses in this case. Only two of the potential witnesses live in Spartanburg, South Carolina: Steve Giles, who testified during the hearing on these motions primarily regarding personnel matters, and Susan FitzGerald, a designer with the company whom Milliken has not alleged to have any information materially related to its present claims against Reynolds.  The five remaining witnesses mentioned in Milliken's briefing live more than two hundred miles away from this district in LaGrange, Georgia.   Additionally, during the hearing on these motions, Milliken submitted testimony of Steve Giles and Michael Callahan who collectively attested to information they gathered from two non-party witnesses which this court believes to be material.  Mr. Giles testified that Shawn Hogan provided him with information concerning Reynolds's alleged breach of her Associate Agreement by soliciting contracts with AT&T on behalf of Shaw.  On cross-examination by Reynolds's counsel, Mr. Giles testified that Mr. Hogan resides in Northern California.  Mr. Callahan testified that he obtained information from John Carillo concerning Reynolds' alleged violation of her Associate Agreement.  On cross-examination Mr. Callahan,

indicated that Mr. Carillo is the Vice President of the West Coast Region for AT&T and lives and works in Northern California. The Milliken representatives further testified concerning information they gathered from Milliken employee, Timothy Engen, who also resides in Northern California and whose testimony is likely to be material in this case. Finally, the Milliken representatives made certain allegations against Reynolds concerning her contacts with individuals at Google, located in Northern California, that will undoubtedly require third-party witness participation for adequate resolution. Based on an evaluation of the potential witnesses mentioned by Milliken's representatives, it appears that only two witnesses are located in this district and that no witnesses with material information are located in this district. However, Milliken correctly notes that it is Reynolds who must demonstrate that witness convenience favors a transfer.

Generally, "[t]he party seeking the transfer must specify clearly, typically by affidavit, the key witnesses to be called and their location and must make a general statement of what their testimony will cover." 15 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 3851 (3d ed. 2010) (collecting cases); *see also Avant v. Travelers Ins. Co.*, 668 F. Supp. 509, 510 (D.S.C. 1987) (finding that there must be "evidence of record on the issue of convenience other than the allegations within the memorandum attached to the motion to change venue"). Although it is true that Reynolds did not provide the court with the specific names of witnesses who may be inconvenienced should the case remain in the District of South Carolina or any affidavits detailing the nature of the witnesses testimony and other pertinent information, the court finds that the record contains sufficient evidence from which the court can determine potential witness names and the materiality of their potential testimony. Milliken would like the court to ignore its witness testimony in the record concerning the third-party witnesses, and particularly the

information elicited by Reynolds's counsel on cross-examination concerning where those witnesses currently reside, however the court simply does not find it to be in the interest of justice and in due consideration of convenience and fairness to do so. *C.f. Avant,* 668 F. Supp. at 510(finding that it was inappropriate to transfer venue where defendant provided no affidavits from the witnesses and/or parties involved and there was no information in the record other than the defendant's "naked assertion" from which the court could determine whether transfer was warranted. The court noted that "the defendant has failed to establish by affidavit, *or otherwise*, that the balance of convenience tips strongly in its favor.").

Accordingly, while the court would not be inclined to simply shift the burden of litigation from one party to the other on the basis of Reynolds's lone assertion of inconvenience, *see Sw. Equip., Inc.,* 2010 WL 4484012, at *2 (internal citations omitted), the court finds it appropriate to consider the potential, material non-party witness testimony highlighted by Milliken's witnesses during the hearing. The court finds that this factor weighs in favor of transferring the matter.

**The Availability of Compulsory Process for Attendance of Witnesses and the Costs of Obtaining Attendance of Voluntary Witness Appearances.**

Regardless of the district in which this matter proceeds, Milliken will be able to require its employees to attend necessary depositions, hearings and trial. Reynolds likewise will be responsible for ensuring her attendance at all necessary depositions, hearings and trial. Because the relative costs incurred by party witnesses simply relate to the court's assessment of shifting the burden of litigation from one party to the other, the court accords little weight, if any, to those costs. Instead, the court is more concerned with the costs associated with procuring the attendance of third party witnesses. Currently, the court is not aware of any third-party witness that resides in South Carolina. The record only suggests that there are third-party witnesses in California and, undoubtedly, it would

be less costly to obtain those witnesses' attendance in the District of Northern California than it would be in South Carolina.

Additionally, to the extent that the third-party witnesses are not willing to voluntarily attend judicial proceedings in this case, they are well-beyond the subpoena power of this court. *See* Fed. R. Civ. P. 45 (permitting the court to subpoena any witness within 100 miles of the trial, deposition, or hearing). The absence of compulsory process is troubling for this court given the materiality of the third-party witness testimony and this district's long-standing preference for live testimony in circumstances where the credibility of the witnesses will be at issue. *See DeLay & Daniels, Inc. v. Allen M. Campbell Co.*, 71 F.R.D. 368, 372-73 (D.S.C. 1976); see also *Akers v. Norfolk & W. Ry. Co.*, 378 F.2d 78, 79 (4th Cir. 1967) (finding depositions "to be inferior to the personal appearance of witnesses in court"). Therefore, the court finds this factor weighs in favor of transferring the case.

**The Ease of Access to the Sources of Proof and the Possibility of a View by the Jury**

The court finds that this factor weighs in favor of transferring the matter to the District of Northern California. Although the forum is virtually irrelevant for sources of proof which rely on documentary evidence, the court has already explained that the forum could impact witness availability. Additionally, although Milliken contends that it has suffered an economic injury here in South Carolina, all of Reynolds alleged wrongful actions took place in California. Particularly at issue are Reynolds actions with respect to the solicitation of a large project with AT&T in San Ramon, California. During the hearing on these motions, the court heard testimony concerning Milliken's experiences with the San Ramon project that are likely to be relevant to this case. To the extent that it becomes necessary for the jury to have access to the project in San Ramon, retention of the case in this district would assure that is an impossibility.

**The Interest in Having Local Controversies Decided at Home**

The court finds that South Carolina has a significant interest in presiding over the controversy, which weighs in favor of retaining the case in the District of South Carolina. Although Reynolds argues that at all times relevant to this case, she lived and worked in California and that all the acts for which Milliken brings its complaint against her occurred in California, Milliken is a South Carolina corporation and Reynolds traveled to South Carolina to complete her training and hiring documentation. This case concerns the protection of Milliken's alleged trade secrets and confidential information. Therefore, Milliken has a substantial concern in seeking relief in the state in which its business operates and where it is suffering economic injury. *See McNeil v. Sherman*, C.A. No. 2:09-cv-00979-PMD, 2009 WL 3255240, *8 (D.S.C. Oct. 7, 2009) (finding the District of South Carolina an appropriate venue for a contract dispute between a resident plaintiff and foreign defendant).

Additionally, assuming the Associate Agreement is found to be enforceable, Milliken also argues that, because the parties agreed that South Carolina law governs this dispute, a South Carolina court would be best suited to hear this matter. While a South Carolina court may have more experience applying South Carolina law to the claims and defenses asserted in this action, the district court in Northern California is sufficiently capable of applying South Carolina law in presiding over this case. However, this does not materially impact the court's finding that there is a substantial local interest in determining the matter in this district.

**The Interests of Justice**.

"Under § 1404(a), the court must consider the 'interest of justice' in determining whether to transfer venue. The interest of justice encompasses public interest factors aimed at 'systemic integrity and fairness.'" *Mullins v. Equifax Info. Serv., LLC, et al.*, No. 3:05-cv-888, 2006 WL 1214024, at *8 (E.D. Va. 2006) (quoting *Stewart Org., Inc.*, 487 U.S. at 30). "Judicial economy and the avoidance of inconsistent judgments are prominent among the principal elements of systemic integrity." *Id.*

As previously noted, all of the wrongful acts Milliken alleges Reynolds has committed occurred in California. All of the witnesses with direct knowledge of Reynolds's alleged conduct are in California. The majority of the remaining witnesses are in LaGrange, Georgia. The project over which this dispute arose is located in California. Additionally, Milliken seeks injunctive relief against Reynolds who works primarily in California. *See Law Bulletin Pub., Co. v. LRP Publ's, Inc.*, 992 F. Supp. 1014, 1021 (N.D. Ill. 1998). Should Milliken be successful in its claim for such relief, the Northern District of California is "the better forum to enforce and monitor any injunctive relief." *Id*. Moreover, it is not apparent to this court that the schedule of the trial of this case is likely to be substantially affected by the district in which it proceeds.

In sum, the court finds that the balance of the factors weighs in favor of transferring this case to the United States District Court for the District of Northern California. The court has considered that Milliken's choice of venue, the existence of the forum selection clause, and the local interest factors favor retention of the case in this district. However, in balancing the relative convenience and fairness of the two districts, the court finds that third-party witness convenience would be better served by the transfer. Further, the court in Northern California would likely have a better ability

to maintain control over the litigation through the use of compulsory process and enforcement of court orders.

For the forgoing reasons, the court **GRANTS IN PART AND DENIES IN PART** Defendant Linda D. Reynolds's ("Reynolds") Motion to Dismiss and/or to Transfer the Case and For a More Definite Statement [Dkt. No. 10].  This case is transferred to the United States District Court for the District of Northern California.  The court declines to address the remaining motions on the merits.

**IT IS SO ORDERED**.

*J. Michelle Childs*

United States District Judge

Greenville, South Carolina
October 26, 2012